Kenneth STELLY, Plaintiff,

v.

BARLOW WOODS, INC., d/b/a Best
Western Seaway Inn, Defendant.

Civ. A. No. 1:90–CV–344R.

United States District Court,
S.D. Mississippi, S.D.

Aug. 12, 1993.

Lisa Collums, Gulfport, MS, Michael Lotief, Lafayette, LA, for plaintiff.

William E. Whitfield, III, Elizabeth L. Baine, Gulfport, MS, for defendant.

## BENCH MEMORANDUM

DAN M. RUSSELL, Jr., District Judge.

This matter is before this Court on the issue of liability and damages listed in the complaint filed by the plaintiff, Kenneth Stelly (hereinafter "Mr. Stelly") against the defendant, Barlow Woods, Inc., d/b/a Best Western Seaway Inn (hereinafter "Michael's"). This cause of action was tried before this Court beginning on June 21, 1993, at the United States Courthouse located in Gulfport, Mississippi, and thereafter conclud-

ed on June 22, 1993. The defendant reargues to this Court to grant its Motion to Dismiss pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure.

## FACTS

On June 18, 1988, at approximately 12:30 a.m.,[1] the plaintiff Kenneth Stelly allegedly slipped and fell due to liquids that were allegedly spilled on the dance floor at the defendant's establishment, a restaurant/nightclub known as "Michael's," which operates out of the Best Western Seaway Inn on Highway 49 in Gulfport, Mississippi. After several minutes of dancing with Mr. Stelly's girlfriend on the night in question, Gina Seymore–Powell, Mr. Stelly slipped and fell twisting his left knee. An ambulance was summoned from Mobile Medic Ambulance Service which then took Mr. Stelly to the emergency room at Memorial Hospital in Gulfport where he was treated for an injury to his left knee.

Upon release from Memorial Hospital, Mr. Stelly was referred to Dr. M.F. Longnecker for follow-up treatment. Subsequently, Mr. Stelly underwent physical therapy at Rehab One in Bay St. Louis, Mississippi. In 1989, Mr. Stelly moved to Lafayette, Louisiana, where he was then treated by Dr. J. Lee Leonard and Dr. John E. Cobb. It was Dr. Leonard who became Mr. Stelly's treating physician and on July 20, 1989, Dr. Leonard performed surgery on Mr. Stelly's knee. Dr. Leonard performed further surgery on the subject knee as well as the right knee in June 1992.

Mr. Stelly alleges in his complaint that the defendant was negligent in failing to properly maintain the floor; failing to prevent a dangerous condition from existing on the floor by allowing the surface to become unsafe for patrons to dance on; allowing the surface to remain in an unsafe condition; and failing to warn Mr. Stelly of the allegedly dangerous condition. Specifically, the plaintiff states the defendant was negligent in the following:

a) That defendant knew or should have known of liquid spills under the circumstances and failed to take reasonably nec-essary steps in removing or preventing such conditions.

b) That defendant failed to adequately light the said dance floor.

c) that defendant failed to conduct regular inspections.

(Complaint at page 2).

As a result of the plaintiff's injury, the plaintiff has suffered an acute injury to his left knee which has required two separate surgeries. The plaintiff argues he is no longer able to work in certain occupations due to his physical disability; thus his job base has been seriously depleted, if not eliminated.

The contested issues of fact before this Court are as follows: Whether there was any moisture or debris on the floor at the time of the fall; whether the injury was proximately caused by the defendant or if it was due to a congenital abnormality of the plaintiff's knee; the nature and extent of the medical expenses and lost wages proximately caused by the fall of June 19, 1988; and the issue of the defendant's negligence and liability therefrom and the nature and extent of the plaintiff's damages, vel non.

The contested issues of law before this Court are as follows: The defendant's negligence or lack thereof; and the nature and extent of the plaintiff's damages, vel non; and defendant's liability therefor.

Plaintiff claims the total amount of medical bills, as a direct and proximate result of the defendant's breach of duty, is $13,368.24. Further, the plaintiff asserts he has lost past wages in the amount of $44,086 (we feel this is excessive and was based upon an unrealistic hourly wage) and future lost wages in the amount of $520,208 (we do not find the defendant to be disabled). Furthermore, the plaintiff claims to have a total loss of health insurance in the amount of $30,734 and lost entitlement of $50,035.

## TRIAL TESTIMONY

Mr. Stelly testified that he slipped and twisted his knee while falling onto the dance floor at Michael's. He believes the fall was

1. Actually this accident, according to the Mobile Medic report dated June 19, 1988, at 12:37 a.m., appears to have occurred on June 19, 1988, as opposed to June 18.

caused by spillage on the dance floor and stated that the left side of his body was damp after touching the ground on which he fell. The surgeries were painful, and he claims he suffers swelling in his knee due to such discomfort; he cannot sit or stand for long periods of time. He claims to have been out of work approximately one year after the accident. Mr. Stelly further testified that he cannot read, write, or spell and has never acquired GED certification.

David Stanfield (hereinafter "Mr. Stanfield"), a patron of Michael's on the night in question, who was seated at the bar approximately 25 to 30 feet away from the dance floor, testified that he saw drinks being spilled on the dance floor. Mr. Stanfield, through his unobstructed view, saw people dancing with drinks in their hands for two hours continuously. Further, Mr. Stanfield heard two separate complaints regarding the condition of the dance floor, the first to the bartender about spillage on the dance floor and the second to the waitress about the spillage on the dance floor. Mr. Stanfield does not know if the spills were ever cleaned up.

Mrs. Leroy Stelly (hereinafter "Mrs. Stelly"), the mother of Kenneth Stelly, testified that her son was extremely uncomfortable after the accident and was in an intense amount of pain. In fact, it was Mrs. Stelly with whom her son lived, and it was she who took care of him after the surgeries. She noted that her son was anxious, depressed, a low self esteem, and as a result her son had problems sleeping. Mrs. Stelly said her son's knee and leg were "swollen badly" and she would rub the leg in the middle of the night to try and help Mr. Stelly sleep. Additionally, Mrs. Stelly testified that her son received social security checks each month.

The plaintiff's expert in Vocational Rehabilitation, Shirley Dickie (hereinafter "Ms. Dickie"), testified that Mr. Stelly was functioning at a fourth grade level and was not a candidate for intellectual training. Ms. Dickie does not feel that he is employable, but she later clarified, in stating that he is not employable in the sense of gainful employment in a competitive environment. If he is in a protective environment, for instance, one in which a friend or family member has hired him, he would be able to function. Ms. Dickie further testified that Mr. Stelly could have joined a union before the accident, which would have been more lucrative for him in the long run, but he cannot now due to the fact that he can no longer do physical labor. She also noted that his knee would swell during visits.

Mr. Stelly's girlfriend on the night in question, Gina Seymour–Powell, does not remember whether there was any moisture on the dance floor. Jennifer Lynn Chin, the waitress/bartender and eventually manager of Michael's, testified that she could not see "anything because it was so dark and crowded." She further stated that drinks were spilled about every night and the lights were always turned down low.

David James Sax, the head of security for Michael's on the night in question, testified that he did not see any water on the dance floor, although the clothes could have absorbed all the moisture and he did not touch the clothes. If patrons brought drinks onto the dance floor, Mr. Sax testified, they were asked to put them down on the drink rail or leave the dance floor. He further stated that drinks spill and that tables are knocked over in the front row spilling onto the dance floor. Additionally, Mr. Sax testified that Michael's served anywhere from a 1000 to 2000 patrons per night and that they never cleared the floor to inspect; they cleaned up at the end of the night. As far as the rules and procedures for Michael's go, the rules are: You never turn lights up in a dance club; you never stop music; you keep partying. If, however, an employee was notified that there was a spill and the employee was able to locate the spill, it was cleaned up.

Elsie Tearce, of the Mobile Medic team which answered the call on the night in question, stated that her partner was no longer with Mobile Medic; therefore, he was unable to testify. She did not note any moisture on the clothes, but she cannot remember who did what; and it is quite possible that her partner cut the wet clothes, she never having had contact with the clothes.

Tavia Tiblets, the defendant's expert in Vocational Rehabilitation, stated that Mr. Stelly qualifies for unskilled entry level positions on a pay scale of federal minimum wage $4.25 to $5.00. She stated that due to his vocational handicap, skill work is not a possibility; however, she does not find Mr. Stelly to be disabled in any way. Further she testified that there were occupations available to Mr. Stelly, such as an assembly line position, which is a bench type of job, "sedentary—medium, and you can sit and stand at-will." Companies in the area which hire for these types of jobs are Bay Technical and Regina Automotive. Another occupation would be that of a machine tender where one maintains machinery.

## DISCUSSION

This cause of action was originally filed in the Circuit Court of Harrison County, Mississippi, and was removed pursuant to 28 U.S.C. Section 1441. This Court asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332. The plaintiff is an adult resident citizen of Lafayette, Louisiana, and the defendant is a foreign corporation organized and existing under the laws of the State of Tennessee, authorized to do and doing business in the State of Mississippi. The amount in controversy exceeds the requisite amount of $50,000.

Summary judgment, under Rule 56 of the Federal Rules of Civil Procedure, is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, *together with affidavits, if any,* show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In *St. Amant v. Benoit,* 806 F.2d 1294, 1296–97 (5th Cir. 1987), the Fifth Circuit addressed the law as regards summary judgment and stated that "[t]he mere existence of a factual dispute does not by itself preclude the granting of summary judgment. '[T]he requirement is that there be no genuine issue of material fact.' *Anderson v. Liberty Lobby,* 477 U.S. [242], [248], 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original.)" (citations omitted).

The Fifth Circuit has addressed when an issue is genuine.

[A]n issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

*Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986) (footnotes omitted).

The United States Supreme Court further stated in *Liberty Lobby* that as to materiality, "[o]nly disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510.

The Supreme Court has noted that the standard for summary judgment mirrors the standard for a directed verdict, the main difference between the two being when they are used, as the inquiry under each is the same. See *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Barebones allegations are insufficient to withstand summary judgment because the opposing party 'must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. Greenwood,* 783 F.2d 1311, 1315 (5th Cir.1986) (citing *Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc.,* 695 F.2d 839, 845 (5th Cir.1983)).

The plaintiff in the case sub judice is classified as a "business invitee."

The leading English case of *Indermaur v. Danes,* 1866 L.R. 1 C.P. 274, 35 L.J.C.P. 184, affirmed, L.R. 2 C.P. 311, 36 L.J.C.P. 181, laid down the rule that as to those who enter premises upon business which concerns the occupier, and upon his invita-

tion express or implied, the latter is under an affirmative duty to protect them, not only against dangers of which he knows, but also against those which with reasonable care he might discover.

Black's Law Dictionary 827 (6th ed. 1990).

As the defendant's counsel stated in support of his Motion to Dismiss, the fundamental law which is applied to slip and fall cases is the existence of a duty which is owed to a business invitee; a breach of that duty; the proximate causation between the breach and the plaintiff's injury; and damages.

■ We must first examine the duty, if any, which is owed to Mr. Stelly by the defendant. The duty of "reasonable care" is not absolute care; it is qualified. "Reasonable" is defined as "fair, proper, just, moderate, **suitable under the circumstances.**" Black's Law Dictionary 1265 (6th ed. 1990). "Reasonable care" is defined as "that degree of care which a person of ordinary prudence would **exercise in the same or similar circumstances.**" *Pierce v. Horvath,* 142 Ind. App. 278, 233 N.E.2d 811, 815 (1968). The key is under these particular "circumstances."

All of the cases cited to this Court by the defendant involve retail stores; however, these cases are easily distinguishable from the present case. The proprietor of a lounge containing a dance floor should reasonably be held to a higher standard than that of a retail store. In the numerous retail store cases, the consumers, as business invitees, are on the premises to **walk** up and down the **well-lit** aisle in an alert capacity in order not to pass by the product which they came to purchase. However, in the present case, the defendant provides a recreational facility for the purpose of prospering from its clientele. A restaurant/night club business invitee is present for different purposes than those of a retail shopper.

First, the atmosphere of Michael's, a dimly lit, crowded lounge with loud music in the background, is clearly distinguishable from that of a retail store. Second, the existence of a dance floor puts the defendant in this case in a higher risk bracket since the customers are not walking up and down straight well-lit aisles; many are dancing in a crowded, dark space, this in itself being a more dangerous activity than walking. Thirdly, David Sachs testified a strobe light existed on the dance floor which might be an additional distraction since it causes a distorted view of the premises. For these reasons alone, the defendant is held to the duty of asserting reasonable care under these particular circumstances in keeping the premises safe for its patrons. Fourthly, the condition alleged is not only foreseeable to the defendant, but the spillage is a continuous occurrence.

■ Again, the burden of proof is on the plaintiff to show by a preponderance of the evidence that the defendant was negligent in maintaining its premises and that the defendant failed to exercise ordinary and reasonable care. Under the applicable Mississippi law, an owner, occupant, or person in charge of premises owes to a business invitee a duty to exercise **reasonable care** to keep the premises in a **reasonably safe condition or to warn the invitee** of the dangerous conditions, not readily apparent, which the owner or occupant knows of or **should have known** of the existence by exercising reasonable care. See *Waller v. Dixieland Food Stores, Inc.,* 492 So.2d 283 (Miss.1986); *Wilson v. Allday,* 487 So.2d 793 (Miss.1986); *Downs v. Corder,* 377 So.2d 603 (Miss.1979); *J.C. Penney Co. v. Sumrall,* 318 So.2d 829 (Miss. 1975). "The mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the [court] may reasonably conclude that due care would have discovered it." W. Prosser and K.P. Keeton, Handbook of the Law of Torts Section 61 (5th ed. 1984). Further, a proprietor is not an absolute insurer of the safety of its invitees; thus when the premises are in a reasonably safe condition, there is no liability. *Caruso v. Picayune Pizza Hut, Inc.,* 598 So.2d 770 (Miss.1992); *McGovern v. Scorborough,* 566 So.2d 1225, 1228 (Miss.1990).

In the present case, the defendant failed to present any evidence of warning provided to the plaintiff as a business invitee. The dangerous condition complained of is one which is foreseeable and occurs continuously even

though policed; thus the defendant possess the requisite knowledge to warn. Examples of such warnings would be notices before each of the dance floor entrances cautioning/alerting customers that the dance floor becomes slippery when wet; notices that drinking is forbidden on the dance floor; similar notices upon entering the lounge; or a policed entry to the dance floor barring all beverages from the proximity of the dance floor, including the tables and drink rail surrounding the dance floor. In this particular case, the plaintiff is functionally illiterate; however, the defendant should warn their patrons, via recognizable warning signs, as do the retail stores.

There has not been any evidence presented to this Court of a set maintenance time schedule or procedure by which the employees of the defendant are required to routinely inspect the dance floor for spillage, nor was there any employee handbook to explain a certain procedure for cleaning up spills. There was, however, employee testimony (Jennifer Chin, David Sachs) stating that when there was a spill, the employees were on notice to clean the spill themselves or to call for a bar back's assistance. The witnesses testified that it would not take more than five minutes to clean up a spill once an employee was on notice of the spill.

In the case *Moran v. Wal–Mart Stores, Inc.,* No. 92–7183 [974 F.2d 1334 (Table)] (decided Sept. 11, 1992, but not reported), the United States District Court for the Southern District of Mississippi granted summary judgment in favor of Wal–Mart in a premises liability case, and the Fifth Circuit Court of Appeals affirmed, concluding that Moran failed to establish a genuine issue of material fact. The Fifth Circuit Court of Appeals only affirms summary judgment rulings where "[they] are convinced, after an independent review of the record, that 'there is no genuine issue as to any material fact' and that a movant is 'entitled to a judgment as a matter of law.'" *Brooks, Tarlton, Gilbert, Douglas, and Kressler v. United States Fire Insurance Co.,* 832 F.2d 1358, 1364 (5th Cir.1987), quoting Fed.R.Civ.P. 56(c) citing *Moran,* at 2.

In *Moran v. Wal–Mart Stores, Inc., supra,* the plaintiff, while shopping at a Wal–Mart store, slipped and fell on kernels of popcorn. Jean Kruz, the manager of the Wal–Mart store, conducted an investigation which revealed that no Wal–Mart employee had knowledge of the presence of the substance on the floor in the vicinity where the plaintiff fell, no employees were given notice of the substance on the floor, and a safety check in the form of a sweep of the area where the plaintiff fell was performed within two hours before the aforementioned accidents. The case before this Court is readily distinguishable from the *Moran* case in the following ways: There was never an investigation as to whether an employee had been notified about the spill (the only investigation was made by the security guard, David Sachs, after the accident who testified he did not see any moisture on the floor); in this case there is testimony (Stanfield) that on two occasions employees were told there were spills on the dance floor and even though drinks continued to be carried on the dance floor, there was no evidence presented which showed these particular spills were or were not cleaned up; and there were no routine safety inspections made with the overhead lights on or off of the dance floor.

The defendant points out "[a]ll parties and witnesses observed that the nightclub was **extremely crowded** on the evening of the occurrence and this too was especially known by the plaintiff." (emphasis added). This contradicts the defendant's assertion that "any accumulation would be **de minimis**," however, if this is true, it would be difficult for the plaintiff or anyone else, such as the defendant's employees, to see the floor to assess the floor's condition. Further, the defendant's employee testified that the lights were never turned on to their full capacity while patrons were present, for lighting up the dance area would cease the popular dancing activity (See testimony of David Sachs).

In the present case there was testimony regarding the presence of a third person who was allegedly dancing recklessly on the dance floor and in fact, had bumped into the plaintiff prior to his fall. The defendant's counsel made innuendos that the third

person's physical contact with the plaintiff may have been the actual cause of the plaintiff's fall. The Fifth Circuit in *Moran* stated the burden of proof to be applied in a premise liability case involving a third party is to be as follows:

> ... when a dangerous condition on the premises is caused by a third person unconnected with store operation, the burden is upon the plaintiff to show that the operator had actual or constructive knowledge of the dangerous condition. *Jerry Lee's Grocery, Inc. v. Thompson,* 528 So.2d 293, 295 (Miss.1988).

*Moran,* at 3. However, if the condition is caused by the proprietor, then the plaintiff is no longer burdened with the showing of notice. *Jerry Lee's Grocery, Inc., supra.* The verbal complaints witnessed by David Stanfield and the continuous reoccurrence of the spillage, as witnessed by numerous witnesses, constitutes actual knowledge in the eyes of this Court. However, this Court will address the issue of constructive notice.

The Fifth Circuit further stated in *Moran:*

> Accordingly, for Moran to recover in a slip and fall case, she must show that Wal-Mart had actual knowledge of a dangerous condition; that the dangerous condition existed for a sufficient amount of time to establish constructive knowledge, and that Wal-Mart should have known of the condition; or that the dangerous condition was created through a negligent act of Wal-Mart or its employees. See *Munford, Inc. v. Fleming,* 597 So.2d 1282, 1284 (Miss. 1992). *Moran's* failure to make such a showing entitles Wal-Mart to summary judgment as a matter of law. See Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992).

*Id.* at 4.

The plaintiff in *Moran* contends that Wal-Mart created the dangerous condition which resulted in her injury and that the issue of whether or not Wal-Mart was on notice is irrelevant. The Fifth Circuit found this argument to fail since *Moran* offered no proof as to how the popcorn came to be on the floor. Again, distinguishing the case before

this Court from *Moran,* there is ample testimony before this Court as to how the moisture, if any, could have spilled and there is actual knowledge of such spillage on the evening in question.

■ If the condition is caused by a third party, constructive knowledge on the part of the occupant is required. Constructive knowledge is proven by showing that the condition existed for such a length of time that the owner/occupant should have known about it. *Douglas v. Great Atlantic & Pac. Tea Co.,* 405 So.2d 107, 120 (Miss.1981); *Mississippi Winn–Dixie Supermarkets v. Hughes,* 247 Miss. 575, 156 So.2d 734, 736 (1963); *Waller v. Dixieland,* 492 So.2d at 285; *Millers of Jackson, Meadowbrook Road Inc. v. Newell,* 341 So.2d 101, 102 (Miss. 1976). "Constructive knowledge is established by proof that the condition existed for such a length of time that, in the exercise of reasonable care, the proprietor should have known of it." *Waller,* at 285 citing *Douglas,* 405 So.2d at 120; *Hughes,* 156 So.2d at 736.

On the issue of "constructive notice," the Fifth Circuit stated in *Moran:*

> In order to prove a claim of constructive notice, it must be shown that a condition existed long enough for a proprietor exercising reasonable care to have known of it. *Mergendahl v. C.J. Gayfer & Co.,* 659 F.Supp. 351, (S.D.Miss.1987). In other words, store owners are entitled to a reasonable time in which to attempt to perform the duty of care imposed by law. See *J.C. Penney Co. v. Sumrall,* 318 So.2d 829, 832 (Miss.1975). The Supreme Court of Mississippi has held in similar cases that time periods of two hours and two and a half hours were insufficient to satisfy this constructive notice requirement. See *Mergendahl v. C.J. Gayfer & Co.,* 659 F.Supp. 351, 353 (S.D.Miss.1987); *Waller v. Dixieland Food Stores, Inc.,* 492 So.2d 283 (Miss.1986).

*Id.* at 5–6. In the case presently before this Court, there is no evidence as to when the premises was inspected, thus the amount of time, unknown, may satisfy the constructive notice requirement.

Further, in the case of *Aultman v. Delchamps, Inc.,* 202 So.2d 922 (Miss.1967), as cited by the defendant, the plaintiff attempted to establish constructive notice by presenting evidence the store opened at 8:00 a.m. and that the accident did not actually

occur until 9:30 a.m. The Mississippi Supreme Court dismissed this argument, noting that the condition could have occurred only seconds before the accident. *Aultman*, 202 So.2d at 924. Furthermore, in the case of *Mergendahl v. C.J. Gayfer & Co., Inc.*, 659 F.Supp. 351 (S.D.Miss.1987), the court granted summary judgment in favor of the premises owner when no proof was shown as to how the object came to be on the floor. In this case there was proof presented that patrons continuously took drinks on to the dance floor and spillage occurs. Further, David Sachs testified that the front tables lining the dance floor often overturn, spilling drinks onto the dance floor. Furthermore, the drink rail surrounding the dance floor is often knocked, sending fluids to the dance floor.

For the foregoing reasons, this Court finds that the plaintiff has presented evidence sufficient to support his claim that the defendant had actual and constructive notice of the conditions which resulted in his injury..

▇▇ Defendant asserts the defense of assumption of the risk. However, this Court does not believe one can assume a risk in which he is unaware of nor which cannot be discoverable upon a reasonable inspection. The circumstances surrounding this injury due to the lack of lighting and mass of people created a latent defect. The defendant failed to show unto this Court enough procedures taken to secure a reasonably safe premise for its patrons. For instance, Wal–Mart has a handbook of such safety measures which, if correctly followed, insure a reasonably safe environment for its patrons. The defendant created the breach of duty to provide a reasonably safe premises when it failed to restrict beverages from the dance floor.

The defendant further brings to this Court's attention the law of **res ipsa loquitur** in Mississippi. Mississippi's law on this theory is a "well settled rule which disallows the application of **res ipsa loquitur** to slip and fall cases." *Douglas v. Great Atlantic and Pacific Tea Company*, 405 So.2d 107 (Miss. 1981).

▇▇ The defendant further argues to this Court that Mr. Stelly had a congenital knee condition which was in fact the proximate cause of his injury. It has long been the law that one takes his plaintiff as he finds him, or in other words, the defendant is not afforded added liberties or absolution of liability due to an alleged congenital knee condition of the plaintiff.

### DAMAGES

▇▇ This Court finds the medical expenses incurred in this case to be the responsibility of the premises owner/occupier. The medical costs to be paid by the defendant are as follows:

| MEDICAL EXPENSES: LEFT KNEE | |
| --- | --- |
| DR. LEE LEONARD | $ 5,251.00 |
| OUR LADY OF THE LOURDES MEDICAL CENTER 7–20–89 ADMITTED | 1,144.89 |
| OUR LADY OF THE LOURDES MEDICAL CENTER 06–22–92 ADMITTED | 4,053.50 |
| MOBIL MEDIC AMBULANCE SERVICE | 372.45 |
| MEMORIAL HOSPITAL AT GULFPORT 06–18–88 ADMITTED | 147.40 |
| GULF COAST COMMUNITY HOSPITAL 03–31–89 ADMITTED | 247.00 |
| GULF COAST COMMUNITY HOSPITAL 09–31–89 ADMITTED | 235.00 |
| DR. M.F. LONGNECKER | 456.00 |
| REHAB ONE, INC. | 930.00 |
| PROFESSIONAL ANESTHESIA SERVICE | 338.00 |
| DIAGNOSTIC RADIOLOGY GROUP | 25.00 |
| DR. JOHN E. COBB | 90.00 |
| SMB RADIOLOGY | 20.00 |
| GULFPORT ORTHOPAEDIC CLINIC | 20.00 |
| DR. JAMES CLAUSE | 45.00 |
| TOTAL: | $13,368.24 |

(Plaintiff's Exhibit 2 as amended at trial)

This Court recognizes the loss of capability as a laborer; at the same time this Court supports the assertion of the defendant's expert that there are numerous occupations which do not require strenuous physical labor which the plaintiff can no longer manage. Therefore, this Court finds that the plaintiff's job market may have been depleted, but it clearly was not eliminated.

This Court recognizes the difference between an electrician's helper and an electrician, the first being in charge of gathering tools and supplies, while the latter is in charge of utilizing such tools and supplies. This Court has heard the testimony of the plaintiff's expert, Shirley Dickey, and the defendant's expert, Tavia Tiblets, and Mr. Stelly himself that he is incapable of passing a GED exam and cannot read, write, or spell. It is very unlikely a person of Mr. Stelly's vocational ability would have moved from an electrician's helper to electrician. This Court is aware that in some situations the electrician's helper's position would be an apprenticeship to an engineer position but does not believe it was meant to be so in Mr. Stelly's case.

In evaluating the salaries of the plaintiff, this Court takes notice of the variance between the economy in the West Palm Beach area which is higher than that of the Gulf Coast. However, this Court agrees with the defendant's expert in that the reasonable high end salary for a person of Mr. Stelly's vocational ability is that of $5.00 an hour. Therefore, this Court awards the plaintiff $10,400, which is $5.00 per hour, forty hours a week, for the year he was incapacitated and unable to work after the accident.

This Court feels reasonable attorney's fees are warranted in this case and hereby finds that the defendant shall pay the plaintiff's counsel such fees. Unless counsel for the plaintiff and counsel for the defendant can stipulate to reasonable fees, this Court requests that plaintiff's counsel submit to this Court a fee statement with proper documentation in accordance with the Uniform Local Rules within twenty (20) days of this Bench Memorandum.

The plaintiff failed to present any proof that he ever had insurance coverage, nor did he show any incident where he was denied insurance coverage after the accident. Further, this Court finds the amount of the future loss of insurance to be unascertainable.

Proof was presented, through the testimony of Mr. Stelly and his mother, of pain and suffering. However, this Court fails to see any request for such compensation and there was no Motion to Amend the pleadings to conform with the proof made during trial. Therefore, no award shall be made for the plaintiff's pain and suffering.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the defendant, Barlow Woods, Inc., d/b/a Best Western Seaway Inn, shall pay unto the plaintiff, Kenneth Stelly, medical costs in the amount of $13,368.24; $10,400 for past loss of wages; and reasonable attorney's fees.

**SO ORDERED AND ADJUDGED.**